19-1002. May it please the court, counsel, I'm John Carlson on behalf of the petitioner in this 2254 habeas appeal, Jimmy Wellman. Mr. Wellman went to trial representing himself a three-day jury trial against a pair of experienced prosecutors. And he went to trial representing himself against his expressed wishes. Now, he's brought two claims on appeal. Both of them are embedded in the firmament of that unsettling act of self-representation. Claim one, you'll recall, challenges the validity of the Faretta waiver he gave that to his self-representation. Claim two accepts the waiver and challenges the state court's refusal to reappoint the defense counsel, a request made after the Faretta waiver, but well before trial began. And it's that claim, claim two, that I want to focus our discussion on. I'm happy to answer questions on claim one, but I'm going to talk about the refusal to reinstate counsel. Well, can I just ask you a question about the claim one? Certainly. Does it matter on your first claim, at least with regard to the part of your argument that Mr. Sufert was constrained in his ability to cross-examine Estelle Allen on the prior bad acts, is it pertinent the way that that was argued to the Colorado Court of Appeals, assuming that it was exhausted and there was no issue of procedural default? I guess to ask it a little bit, hopefully, more clearly, under 2254 D1, when we talk about whether or not a state appellate court has reasonably applied Supreme Court precedent, don't we logically and naturally look at the reasonableness of the state appellate court's disposition based on the way that it was presented to that court? And the reason I ask is Mr. Wellman's state appellate counsel, I don't think, presented the argument with regard to the constraint on cross-examining Estelle Allen nearly as clearly as you have. I think that's fair. I think, though, exhaustion is an on-off switch. Assuming that it was exhausted and assuming no issue of procedural default, assuming there was an adjudication of the merits. I think the question is, is the claim fairly presented? I don't hear. I'm not asking that. So I'll ask it this way. Assuming that it was exhausted, assuming it was fairly presented, but just in applying 2254 D1, your counterpart in state court said, second, even if neither party called Padilla, the PD would be limited in impeaching Estelle Allen in regard to any contact she had with Padilla. If I am a judge on the Colorado Court of Appeals, I think, well, that's not a very good argument. That's irrelevant if the prosecutor and Mr. Supert had independently decided not to call Mr. Padilla. Why would anybody think that a trial judge would admit as relevant Estelle Allen's decision or whatever she has to say about her contacts with Padilla, a non-witness who's, and particularly if tampering is severed, why would that be even relevant? Well, it's relevant insofar as the argument that I do make on appeal that accepting the representation of a conflicted lawyer is perilous terrain. That's the problem with Mr. Supert's presence in that case is he's torn between two clients. Not anymore, based on what your counterpart in state court argued, because now the only thing that Mr. Estelle Allen is going to be constrained by this conflicted Mr. Supert is talking about something that's totally irrelevant. What she had to say with Padilla, a non-witness, who's the content of whatever he had to say is not even in the case anymore. Your Honor, imagine she said to Mr. Padilla, I invented, fabricated my 404 allegation that I'm about to repeat. And if your counterpart had made that argument, that would be a dynamite argument. Well, but because counsel, Mr. Seifert wasn't restrained in his ability to spill into the record. And even if your counterpart had said that, that under Mickens and Holloway, I can't elucidate, but that was somehow relevant. But even your Mickens argument that you've made to us, they didn't make that argument in state court. Your Honor, first, she's not my counterpart. She's a state court lawyer. And I'm not a potted plant. I'm not required to just parrot what she said. Now, I started this. I'm not criticizing you. I'm questioning the reasonableness of what the Colorado Court of Appeals is based on what had been presented to me. I'm not criticizing you. Oh, I didn't take it. I didn't take it as criticism. I just, I guess, I'm resisting the notion that I'm somehow limited entirely by what she argued to the Court of Appeals, given that we're not disputing the fair presentation of the claim. But that being said, there's a reason why I started this argument more than five minutes ago, directing my attention to claim two. I think it's a stronger claim. I just had a question. Can you answer it? OK. Now, if I could resume claim two, the reason it's a stronger claim, in my view, is the single overarching fact that undergirds the claim, is that when Mr. Wellman asked for the reappointment of his lawyer, there was one thing beyond quibble in the record. The defense lawyer was ready for trial. Granting that motion would have entailed no delay to the proceedings. That fact permeates this argument and strips the state court of the discretion it otherwise would have had to deny that motion. Don't we give the state court the benefit of the doubt here, though, in light of Mr. Wellman's previous treatment of his counsel and the idea that maybe the state trial judge was sitting there thinking, Mr. Wellman is setting me up here. He is, one week before trial, changed his mind again, and he now wants Seifert. And I'm getting ready to, a few days from now, have Mr. Seifert come in and say, judge, I can't continue to represent him. We have irreconcilable differences. Yes, your honor. But the state court had at its disposal a remedy it eschewed. It could have ruled a remedy it had at its disposal that it declined to exercise. And that was to strip Mr. Wellman of his right to counsel. The state courts did not do that. So I am not here to praise Mr. Wellman's behavior. He's a difficult man. And he was difficult in ways that are clear on the record and not clear. But he stopped short of losing his right to counsel. So because the state court, I mean, the state court, I guess, at that time, had the option of saying, OK, I'm going to let Mr. Seifert come back and represent you. Or the state court could have said, in your argument, Mr. Wellman, you've abused the process throughout. And because of that, you don't have the right to counsel anymore. No, at the point Mr. Wellman asked for the reinstatement of his lawyer, a week after he gave his Ferretta advisement, the trial court did not have the option of stripping him of his right to counsel. Because a week earlier, he had reaffirmed Mr. Wellman's right to counsel as being intact. When the state court could have stripped him, Mr. Wellman was at that hearing a week prior. I would not be standing here today if the trial court had said, I'm not going to give you a Ferretta advisement because you have lost your right to counsel. The trial court did not rule. And more important, the Court of Appeals acknowledged that the trial court stopped short of stripping Mr. Wellman of his right to counsel. So instead, the trial court forged ahead and presented Mr. Wellman with a choice that, by definition, reflected his retention of his right to counsel. He gave Mr. Wellman the choice to accept Mr. Seifert as his lawyer or go to trial on his own. Mr. Wellman made the disastrous decision to go to trial on his own. Seven days later, before any meaningful trial proceedings had begun, he changed his mind. He changed his mind with his right to counsel remaining intact. And the trial court, it wasn't absolute. I'm not claiming for a moment that the prior Ferretta waiver was irrelevant. It was a substantial event in this case. And it took Mr. Wellman's automatic, unrestricted right to counsel to a diminished right to counsel, a qualified right. But it persisted. Persisted nevertheless, you might even say. It could not be denied, that request, without a compelling reason, a reason that withstands constitutional scrutiny. The Supreme Court has never ruled on this particular issue. The Supreme Court has ruled that the Sixth Amendment guarantees the right to counsel at all crucial. True, but whether the ruling on the request to reinstate, who was validly dismissed earlier, has to be accepted. True, but the Supreme Court has also said repeatedly that a general standard, like Gideon, can be unreasonably applied by a state court. Well, hasn't the Supreme Court specifically, in effect, ruled on the California approach? It declined to rule. What the Supreme Court said was the Ninth Circuit made a major mistake. It filled in. It gave flesh to a general rule by relying on circuit cases. Well, they agreed that the totality of the circumstances was not contrary to an unreasonable application. Exactly, and would that Mr. Wellman had that totality of circumstances framework operating here, he would have prevailed on that motion. What the martial court stands for is, one, you can't fill out a general principle by reference to circuit principles or circuit cases. And two, given. Well, didn't it suggest that the totality of the circumstances was an appropriate consideration, and that the California court, in that case, had given? Yes. In this case, don't we have the same thing? No, we do. California. We've got a guy that has taken every step in the book to stop or slow down the proceedings, and now he's trying to do it again. But he has not taken one additional step, Your Honor. He has not taken that step that forfeited his right to counsel. And what martial stands for is that, given the general principle that I'm relying on, a state court has the discretion to deny a reappointment motion. I don't deny that. A state court does have the right to deny a motion for reappointment under certain circumstances. The essential fact here is that those circumstances, in this case, point to reestablishing that relationship with the lawyer, because it would have involved no delay to the trial. So there was no prejudice, no harm. And the state of Colorado does not have what California offered Otis Rogers, which was a prescribed set of factors. When the Colorado court affirmed it, they went over the fact that this guy had engaged in highly manipulative behavior throughout the trial. Isn't that a valid basis on which to predicate the result? No, because that same court of appeals recognized that when Mr. Wellman asked for reappointment of counsel, he had not lost his right of counsel through this misbehavior. So in essence, what I'm saying, Judge Kelly, is that Mr. Wellman's bad behavior wasn't sufficient to forfeit his right to counsel. And you don't have to ask me. Ask the state court of appeals. It said as much. It said, we do not rule on that basis, nor did the trial court. We choose other reasons. And had the state court ruled that on an alternate ground, that he had forfeited his right to counsel, again, I wouldn't be here. What's critical is that his misbehavior, while troubling and indefensible, did not cross a point that cost him the right to counsel. So I'm having trouble with the deferential standard of review that we are required to apply. But it's deferential, not capitulation, Your Honor. And I accept the deferential standard. And I accept the general standard here. Thank you. Thank you. We'll hear from the affiliates. May it please the court. I'm Christine Brady, representing respondents. So on the issue of the reasonableness of refusing to appoint counsel for the third time, the judge here found that Mr. Wellman had been a master manipulator. He just wanted control of the case. His strategy was not to put forth evidence of an alternate suspect, as he claimed. Instead, the court found he was creating appellate issues, he was deceiving the court, and he was derailing the proceedings. Why? Well, he was cautioned not to derail the proceedings, right? I'm sorry? He was cautioned not to derail the proceedings. Well, he was. That was right before trial. These are the findings of, actually, the pretrial judge. We had two judges here. We had a pretrial judge that was for two years for the pretrial proceedings. And yes, then when the trial judge was presiding, she did warn him that as we go forward, you are not to derail the proceedings. And if you decide not to represent yourself and to stand mute, which is basically what he did, that's not going to be a cause for mistrial. But she had read all of the transcripts from the two years of, yeah. So everything, all of the bad stuff that he did, now why would that be pertinent to whether or not the trial court improperly applied the Sixth Amendment in not allowing Mr. Suffer to be reinstated when he's not, as Mr. Carlson argues, he is not asking for more time. And there's no really reason that's been identified not to reinstate him. Well, I believe in the Marshall v. Rogers case that we've already discussed a little bit, it's a totality of the circumstances test. But in that case, there was a problem of what they called the proclivity to substitute counsel. Post-conviction. Well, the facts in that case was he had substituted counsel three times. And then he was asking for the court to reappoint for post-conviction, well, for a motion for a new trial. That's correct. There's nothing in that case, though, to distinguish that reasonableness from the reasonableness here. Well, except Gideon v. Wainwright doesn't have anything to do with your right to counsel post-conviction. Gideon v. Wainwright, OK. So there was this argument about Gideon having primalcy over Ferretta. OK, that's a different. That's not what you're referring to. No, I'm saying in determining whether or not the Colorado Court of Appeals reasonably applied clearly established federal law, before the trial has started, why would it be reasonable to decline Mr. Seufert's request to be reinstated at that point when there is no request to continue the trial? Why? Well, there's two reasons. One is the defendant's pattern of bad behavior. And that's when I was starting out to explain that the pretrial judge had found that the defendant's purpose was to impede the administration of justice. Wouldn't it be a lot better? I mean, if he's representing himself, he can create all sorts of answers to prejudice the jury, as opposed to have it. Wouldn't that be a good reason to reappoint Mr. Seufert? Well, certainly the prosecutor wanted counsel during the trial. But I think in reading the transcripts of the defendant's misbehavior for two years, I think the trial judge had just decided that he had crossed the line. And she wasn't going to reward his bad behavior. And she also was concerned about his future bad behavior during the trial. This court has, the Tenth Circuit has two opinions that it did issue, where it does say that Gideon wins over Ferretta. But that was when the trial court appoints counsel over the defendant's objection.   over the defendant's objection. Reply brief. That's not facts that are identical here. So to the point that that might be persuasive, it doesn't apply. Marshall v. Rogers is the case that's closest to this case. And he said that it was not unreasonable for the court there to refuse to appoint counsel because of the obstructive and manipulative conduct of the defendant. You don't have to appoint counsel for the fourth time. Are there any other questions? Thank you. Thank you. This matter will be submitted. I think the panel is out of time. This matter will be submitted. Thank you, both sides, for your excellent oral and written advocacy. And court will be at recess until 9 o'clock tomorrow morning.